UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF LEVI STRAUSS & CO, | Case No.18-mc-80123-JSC<br><br>**ORDER RE: EX PARTE APPLICATION FOR JUDICIAL ASSISTANCE**<br><br>Re: Dkt. No. 1 |

Applicant Levi Strauss & Company filed an *ex parte* application to take discovery pursuant to 28 U.S.C. § 1782. (Dkt. No. 1.) That statute allows a district court to order a person residing or found within its district to produce documents or provide testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. Here, Levi Strauss seeks an order granting it permission to issue a subpoena to obtain documents from a non-party in connection with two trademark infringement actions pending in the courts in Belgium. Upon consideration of the application and the relevant legal authority, the Court GRANTS the application.

**BACKGROUND**

Levi Strauss marks its LEVI'S brand products with a distinctive set of trademarks including distinctive pocket stitching. (Dkt. No. 1 at 2:11-17.[1]) In the mid-2000's, Levi Strauss brought an enforcement action against the German retail chain New Yorker S.H.K. GmbH ("New Yorker") alleging that New Yorker violated its "Arcuate trademark." (*Id*. at 3:1-5.) On July 21, 2006, the parties reached a settlement agreement under which New Yorker agreed not to use

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

stitching similar to the Arcuate trademark and that if it did so after January 1, 2007, it would be subject to a penalty of 50 euros per garment. (*Id*. at 3:3-7; 12 (Ex. A).) Any dispute under the agreement was to be brought in Brussels, Belgium. (*Id.* at 3:7-8.)

In October 2010, Levi Strauss brought a complaint in Brussels against New Yorker for violation of the settlement agreement based on New Yorker's use of several different pocket stitching designs since 2007 that infringed on Levi Strauss's marks. (*Id.* at 3:9-15; 47 (Ex. B).[2]) The Brussels court found that New Yorker had violated the 2006 agreement and entered a provisional judgment against New Yorker in the amount of 1,250,000 euros. (*Id*. at 3:17-19.)

In 2014, Levi Strauss filed a second action in Brussels against New Yorker alleging that yet another of New Yorker's stitching designs violated the 2006 agreement. (*Id*. at 22-23; 69 (Ex. C)[3].) The Brussels court found that New Yorker had violated the agreement and appointed an expert to determine how many units were sold in violation of the agreement and were subject to 50 euro/unit contractual damages. (*Id*. at 3:22-4:2.) "Under Belgian law, the parties may submit to the expert any information that they believe would be helpful to the expert's mission." (*Id*. at 4:3-4.) In New Yorker's initial submission, it advised the expert that it only sold one style of jean bearing the infringing design and that it only sold 3,507 units of those jeans. (*Id*. at 4:5-6.) Levi Strauss believes this number is inaccurate and that the number of units is likely in the millions. (*Id*. at 4:7, 14.) The expert has attempted to obtain information from New Yorker regarding its sales since 2006, but New Yorker has not provided evidence to this effect. (*Id*. at 4:15-25.)

Levi Strauss thus turned to the Wayback Machine, owned by the Internet Archive, to view past versions of the New Yorker's website and determine how many jeans were sold after January 1, 2007.[4] (*Id*. at 5:15-17.) However, when Levi Strauss searched for New Yorker's website

---

[2] This document is in French and no translation was provided, but Levi Strauss represents that it is a copy of the complaint filed in 2010.
[3] This document is in French and no translation was provided, but Levi Strauss represents that it is a copy of the complaint filed in 2014.
[4] "The Internet Archive has been archiving the web for 20 years and has preserved billions of webpages from millions of websites. These webpages are often made up of, and link to, many images, videos, style sheets, scripts and other web objects. Over the years, the Archive has saved over 510 billion such time-stamped web objects, which we term web captures." *See* https://blog.archive.org/2016/10/23/defining-web-pages-web-sites-and-web-captures/ (last visited August 14, 2018). This web history is available through the Wayback Machine. *See*

newyorker.de on the Wayback machine, it received an error message stating that "This URL has been excluded from the Wayback Machine." (*Id*. at 5:17-25.) Levi Strauss also discovered other gaps in the Wayback Machine's results for other New Yorker-related websites for the period of 2007-2016. (*Id*. at 6:1-2.) The Wayback Machine FAQ's state that an individual or other entity can request that a site be excluded from the Wayback Machine. (*Id*. at 5:10-12; *see also* https://archive.org/about/faqs.php#The_Wayback_Machine (last visited August 14, 2018).)

Levi Strauss filed the underlying Section 1782 application seeking permission to issue a subpoena to obtain information from the Internet Archive regarding: (1) whether New Yorker requested that the www.newyorker.de website be excluded from the Wayback Machine; (2) whether New Yorker requested that the history for the wwww.newyorker.cr and www.newyorker.sk website be excluded from the Wayback Machine; and (3) copies of any such website history that still exists even though it has been hidden from public view. (*Id*. at 6:21-25; Dkt. No. 1-2 at ¶ 2.)

**LEGAL STANDARD**

Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). A litigant in a foreign action qualifies as an "interested person" under Section 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). To apply for discovery pursuant to Section 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Id.* at 258-59. Instead, all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id.* at 259 (holding that discovery was proper under Section 1782 even though the applicant's complaint

---

https://archive.org/about/ (last visited August 14, 2018).

3

was still only in the investigative stage). When it comes to requests directly from foreign courts, district courts typically handle Section 1782 discovery requests in the context of an *ex parte* application for an order appointing a commissioner to collect the information. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that the subpoenaed parties may object and exercise due process rights by bringing motions to quash the subpoenas after the court issues a Section 1782 order); *see, e.g.*, *In re Request for Int'l Judicial Assistance from the Nat'l Ct. Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (granting *ex parte* application for a Section 1782 order); *In re Request for Int'l Judicial Assistance from the 16th Family Ct. of the Supreme Ct. of Justice of the Fed. Dist.*, No. 14-mc-80083-JST, 2014 WL 1202545, at *1 (N.D. Cal. Mar. 19, 2014) (same). The same is generally true for Section 1782 applications brought by private parties. *See, e.g.*, *Mak v. For the Issuance of Discovery in Aid of Foreign Proceeding Pursuant to 28 U.S.C. 1782*, No. C 12-80118 SI, 2012 WL 2906761, at *1-2 (N.D. Cal. July 16, 2012) (denying motion to quash after having granted ex parte application for deposition subpoena under Section 1782).

The court retains wide discretion to grant discovery under Section 1782. *See Intel*, 542 U.S. at 260-61. In exercising its discretion, the court considers the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65; *see also In re Request for Judicial Assistance from the Seoul Dist. Crim. Ct.*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted) (noting that the only requirements explicit in the statute are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal, but also holding "that the investigation in connection with which the request is made must related to a judicial or quasi-judicial controversy").

"A district court's discretion is to be exercised in view of the twin aims of [Section] 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Nat'l Ct. Admin. of the Republic of Korea*, 2015 WL 1064790, at *2 (citing *Schmitz v. Bernstein Libehard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)). The party seeking discovery need not establish that the information sought would be discoverable under the foreign court's law or that the U.S. would permit the discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261-63.

## DISCUSSION

### A. Statutory Authority

Levi Strauss's application satisfies the minimum requirements of Section 1782. First, the Internet Archive's principal place of business is in San Francisco, California which is within the Northern District of California. Second, the requested discovery is for use in two Belgian lawsuits, which are proceedings before a foreign tribunal. With respect to the third factor, Section 1782 plainly states that discovery orders may issue upon the request of either a foreign tribunal or an interested party. 28 U.S.C. § 1782(a). An "interested person" seeking to invoke the discovery mechanism of Section 1782 may include "litigants before foreign or international tribunals ... as well as any other person ... [who] merely possesses a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256-57 (quotation marks and citation omitted). Levi Strauss is a party to the foreign proceedings underlying this case; indeed, it is the plaintiff in two actions alleging trademark infringement and it seeks evidence from the Internet Archive to support its damages claims for use in the Belgian court. Accordingly, Levi Strauss has a "reasonable interest" in obtaining judicial assistance and, therefore, may apply for judicial assistance pursuant to Section 1782. *See Akebia Therapeutics, Inc. v. Fibrogren, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015). Lastly, the instant ex parte application is an acceptable method of requested discovery under Section 1782. *See Tokyo Dist., Tokyo, Japan*, 539 F.2d at 1219.

### B. Discretion

The Court finds good cause to exercise its discretion to authorize the requested discovery. *See Intel*, 542 U.S. at 260-61. The Internet Archive is not a party to the Belgian actions, and

therefore discovery regarding its records is unattainable absent Section 1782(a) aid. With respect to the second discretionary factor and the nature and receptivity of the foreign tribunal, Levi Strauss represents that the expert appointed in the 2014 action has been unable to obtain the information sought here, and that under Belgian law, Levi Strauss is allowed to provide this information to the expert to assist with the damages calculation. It thus appears that the Belgian court would be receptive to an order from this Court regarding the information sought here. Nor is there anything to suggest that the request here is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65.

Finally, the discovery sought does not appear to be unduly burdensome and appears to be appropriately tailored. Levi Strauss seeks information regarding whether New Yorker has requested that information relevant to the damages calculation be removed from the Internet Archive, and if so, whether that information is still viewable. While the Internet Archive has not had an opportunity to respond to the application or to raise any arguments about the burden or intrusion the subpoena imposes on it, applications for Section 1782 subpoenas may be filed ex parte because "[t]he witnesses can...raise [ ] objections and exercise[ ] their due process rights by motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d at 1219. The Internet Archive shall therefore have 30 calendar days after the service of the subpoena to contest it.

**CONCLUSION**

For the reasons described above, the Court GRANTS the 1782 application with the following conditions:

1. The Subpoena is limited to seeking documents from Internet Archive in the three categories previously indicated: (1) whether New Yorker requested that the www.newyorker.de website be excluded from the Wayback Machine, (2) whether New Yorker requested that the history for the www.newyorker.cr and www.newyorker.sk website be excluded from the Wayback Machine; and (3) copies of any such website history that still exists even though it has been hidden from public view.

2. Levi Strauss may use the information obtained for the sole purpose of the Belgian

proceedings.

3. Levi Strauss must serve New Yorker with a copy of this Order and the subpoena within seven days. New Yorker may, within 21 days from the date of the notice, file any motions in this court contesting the subpoena (including a motion to quash or modify the subpoena) if it has a good faith basis to do so. If New Yorker contests the subpoena, the Internet Archive must preserve (but not disclose) the information sought by the subpoena pending resolution of the case.

4. The return date of the subpoena shall be set after the expiration of the 30-day period to allow the Internet Archive to contest the subpoena if it has a good faith basis to do so.

5. Should the Internet Archive or New Yorker file a motion to quash, this action shall automatically be reopened.

**IT IS SO ORDERED.**

Dated: August 15, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge